UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

v.

ALINE ANGULO-GOMEZ,

                     Defendant.

---

1:19-CR-00061-EAW-MJR

REPORT, RECOMMENDATION
AND ORDER

This case was referred by the presiding judge, the Honorable Elizabeth A. Wolford, to this Court, pursuant to 28 U.S.C. §636(b)(1), to handle non-dispositive discovery motions and to make a recommendation as to all suppression motions. Before the Court are omnibus motions by defendant Aline Angulo-Gomez ("defendant"), including a motion to dismiss the Indictment and a motion to suppress evidence and statements, as well as various discovery demands. (Dkt. No. 17). For the following reasons, it is recommended that defendant's motion to dismiss and motion to suppress be denied. The Court's decisions as to defendant's various discovery demands are also set forth in detail below.

## PROCEDURAL HISTORY

On April 4, 2019, an Indictment was filed charging defendant with one count of re-entry of a deported alien into the United States, in violation of Section 1326(a) of Title 18 of the United States Code. (Dkt. No. 10). The Indictment alleged that on or about December 18, 2018, defendant, an alien who previously had been deported and removed from the United States on or about December 31, 2014, was found in the United States

without having obtained express consent, by either the Attorney General or the Department of Homeland Security, to reapply for admission. (*Id.*).

Defendant has filed omnibus motions seeking, *inter alia*, dismissal of the Indictment based on invalidity of the underlying deportation order and suppression of evidence and statements derived from her encounter with a United States Border Patrol Agent on December 18, 2018. (Dkt. No. 17). The Government filed a response to these motions. (Dkt. No. 21). Defendant filed a reply to the response and a supplemental affirmation, which corrected certain factual statements made in defendant's motion papers. (Dkt. Nos. 23, 31). A suppression hearing was held before this Court on August 15, 2019 which included the testimony of Jason Rouch of the United States Border Patrol. (Dkt. Nos. 36, 37).

The Government and defendant filed post-hearing briefs. (Dkt. Nos. 42, 43).  The Government and defendant have also filed reply briefs. (Dkt. Nos. 44, 45). Oral argument was held before this Court on January 3, 2020 and January 15, 2020, at which time the Court considered the matter submitted.

## BACKGROUND[1]

Defendant was born and raised in Mexico. She is a married mother of two minor children who has lived in Elkhart, Indiana with her husband and children for the past eleven years. Defendant's children are United States citizens and her husband is in the process of applying for lawful permanent residency. She originally came to the United States on a tourist visa. Her last valid visa expired in January 2009. Defendant went back to Mexico in the summer of 2014 for medical treatment and because her mother, who

---

[1] All facts in this section are taken from defendant's Affirmation in Support of Motion (Dkt. No. 17, pgs. 4-10) and defendant's Supplemental Affirmation. (Dkt. No. 31).

resides there, was ill. She tried to return to the United States on December 31, 2014 by walking across the Morley Gate Port of Entry in Nogales, Arizona. She was detained and interrogated, at which time she admitted that the visa she was using belonged to someone else. She had purchased it to try to return to her family in the United States. The Government declined to prosecute. However, defendant was charged with an immigration violation and immigration officials brought expedited removal proceedings. She was ordered removed on the same date, December 31, 2014. Defendant argues that immigration officials had the discretion to allow defendant to voluntarily withdraw her application and voluntarily return to Mexico to avoid removal proceedings.

On December 18, 2018, defendant was traveling to New York City by train for her job as a nanny for a wealthy family. She was stopped and questioned by United States Border Patrol Agent Jason Rouch at the Amtrak Train Station in Depew, New York. Agent Rouch was conducting "transportation checks." He approached defendant aboard the train and questioned her about her citizenship. After admitting that she was illegally present in the United States, defendant was arrested and transported to the Buffalo Border Patrol Station. Upon arrival, her fingerprints were taken and matched to an Alien Registration Number and FBI Number. This led to the procurement of her Alien Registration File ("A-file), which revealed that defendant was physically removed from the United States on December 31, 2014 after expedited removal proceedings.

## DISCUSSION

The Court will address Defendant's dispositive motion to dismiss and motion to suppress before turning to her non-dispositive pre-trial motions and the government's motion for reciprocal discovery.

3

I.    ***Motion to Dismiss Indictment***

Defendant moves to dismiss the Indictment under 8 U.S.C. § 1326(d) based on alleged defects in the prior removal order from December 31, 2014 which the offense charged herein is predicated upon. As stated above, defendant is charged with violating Section 1326(a) of Title 8 of the United States Code, which makes it a crime for a previously deported alien to enter, attempt to enter or be found in the United States without having obtained permission by the Attorney General or Department of Homeland Security. A defendant charged with illegal reentry in violation of Section 1326(a) may defend against this charge by challenging the validity of the underlying deportation or removal order. *United States v. Mendoza-Lopez*, 481 U.S. 828, 837 (1987); *United States v. Lopez*, 445 F.3d 90, 94 (2d Cir. 2006). To succeed on such a challenge, the defendant must show that:

> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d). The Court has reviewed each prong of the test as follows and concludes that the defendant has not satisfied the requirements of 8 U.S.C. § 1326(d) in challenging the prior deportation order.

a. *Exhaustion of Administrative Remedies*

As to the first factor, defendant argues that exhaustion of administrative remedies was futile in the context of an expedited removal proceeding. (Dkt. No. 17, pgs.12-13). She contends that because most aliens are unaware of review procedures, a showing of

exhaustion is extremely difficult. (*Id.*). Defendant further contends that because she was removed from the country on the same day that she attempted entry, she never had the opportunity or ability to challenge the validity of the order, and, in fact, no statutory remedies existed to review the unreasonable removal order. (*Id.*). Defendant notes that she did check the box in the Notice of Intent/Decision to Reinstate Prior Order on December 18, 2018, which indicated that she was contesting reinstatement of the prior removal order. (*Id.*). While the Government states that it is unclear if defendant exhausted her administrative remedies, it acknowledges that administrative appeal of an expedited removal decision is limited. (Dkt. No. 21, pg. 7). The Government does submit that it is possible to request that the Department of Homeland Security reopen or reconsider an expedited removal decision. (*Id.*). However, it is unclear how defendant would have known about this relief.

Federal law limits an alien-defendant's ability to make a collateral attack on prior expedited removal proceedings. *See* 8 U.S.C. § 1225(b)(1)(D) ("In any action brought against an alien under section 275(a) or section 276 [8 USCS § 1325(a) or 1326], the court shall not have jurisdiction to hear any claim attacking the validity of an order of removal entered under subparagraph (A)(i) [an expedited removal proceeding] or (B)(iii)."). This statute contradicts the holding of *Mendoza-Lopez* that "where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be *some* meaningful review of the administrative proceeding." 481 U.S. at 837-38 (emphasis in original). The Ninth Circuit has held that, despite the restrictions of Section 1225(b)(1)(D), *Mendoza-Lopez's* mandate for an opportunity for "meaningful review" still applies to alien criminal

defendants seeking to challenge expedited removal orders used as predicates in Section 1326(a) prosecutions. *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1081-85 (9th Cir. 2011). Accordingly, "an alien previously removed pursuant to an expedited removal order must receive some judicial review of the proceeding resulting in that order if the alien challenges the expedited removal order as 'fundamentally unfair,' and the order is to 'play a critical role in the subsequent imposition of a criminal sanction.'" 655 F.3d at 1085 (quoting *Mendoza-Lopez*, 481 U.S. at 837-39). This precedent opens the door for a defendant to obtain review of an underlying expedited removal order such as this.

Further, the Second Circuit has supported the argument that those placed in administrative removal proceedings can be excused from exhaustion of administrative remedies if no legal route existed for them to challenge the determination. *See United States v. Copeland*, 376 F.3d 61, 67 (2d Cir. 2004) ("[F]utility excuses a litigant from a statutory exhaustion requirement 'where the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint.'" (quoting *Booth v. Churner*, 532 U.S. 731, 739 (2001)). Here, defendant was removed pursuant to Section 1225(b)(1)(A)(i) which, by its terms, provides that no administrative or judicial review is available. *See United States v. Ferreira*, 2019 U.S. Dist. LEXIS 16175, at *19-21 (D. Mass. 2019). Assuming, *arguendo*, that defendant is excused from the exhaustion requirement on the grounds that no legal route existed for her to challenge the expedited removal decision, the Court will go on to review the other factors of Section 1326(d).

6

b.  *Opportunity for Judicial Review*

Similarly, with respect to the second prong, defendant argues that she was denied meaningful judicial review because she was never given an opportunity to challenge the validity of the removal order, and indeed, no statutory remedies, whether administrative or judicial, existed to review the order. (Dkt No. 17, 13-14). The Government appears to concede that defendant had no opportunity for judicial review since she was removed on the same date she attempted to enter the United States. (Dkt. No. 21, pgs. 7-8). Even though a habeas corpus proceeding was technically available to defendant, her same day removal meant that any judicial review was not "realistically possible." *See Copeland*, 376 F.3d at 68 (deciding that opportunity for judicial review will be deemed to have been denied where the interval between entry of the final deportation order and the physical deportation is too brief to afford a realistic possibility of filing a habeas petition); *United States v. Calderon*, 391 F.3d 370, 376 (2d Cir. 2004) (where an alien is physically deported from the United States before he can file a habeas corpus petition, "the speed of the deportation renders judicial review impracticable"); *United States v. Gonzalez*, 15-CR-0021, 2015 U.S. Dist. LEXIS 69904 (S.D.N.Y. May 29, 2015) ("An alien can similarly satisfy the second prong, the deprivation of an opportunity for judicial review, if his waiver of appeal is not knowing."). Thus, the Court will assume defendant has satisfied the second requirement of challenging her prior removal order and advance to the third, and most substantive, element of the analysis.

c.  *Fundamental Unfairness*

The third prong requires a showing that the prior deportation order was fundamentally unfair. To demonstrate fundamental unfairness and thus satisfy the this

element, an alien "must show both a fundamental procedural error and prejudice resulting from that error." *Copeland*, 376 F.3d at 70 (citing *United States v. Perez*, 330 F.3d 97, 104 (2d Cir. 2003)). Procedural errors usually fall into four categories: (1) not removable as charged; (2) not advised of available relief; (3) violation of the right to counsel; and (4) denial of notice or an opportunity to be heard. *Id.* Importantly here, available alternative relief can take the form of withdrawal of an application for admission. *United States v. Raya-Vaca,* 771 F.3d 1195, 1207 (9th Cir. 2014). Further, the Second Circuit has held that failure to advise an alien of available administrative relief, even if the relief is discretionary, may render a removal order fundamentally unfair. *Copeland*, 376 F.3d at 71-73. To show prejudice, there must be a reasonable probability that, but for the procedural error, the result of the alien's administration proceeding would have been different. *Copeland*, 376 F.3d at 70.

Here, defendant argues that the 2014 expedited removal was fundamentally unfair. Based upon the record before the Court, it appears that when defendant was found at the Nogales, Arizona port of entry with a fraudulent visa, immigration officers had the discretion to allow defendant to withdraw her application for entry and voluntarily return to Mexico. Further, it appears that United States Custom and Border Protection officers use a "Discretionary Authority Checklist for Alien Applicants" ("Checklist") to determine if an alien is eligible to withdraw their application for admission and voluntarily return to their country of origin. (Dkt. No. 19, pg. 16-18). Defendant contends that the checklist was not accurate, and that it was inappropriately and unfairly applied to her. (Dkt. No. 23, pgs. 5-9). She submits that had the checklist been properly applied, she would should have been

allowed to withdraw her application for admission and permitted to voluntarily walk back to Mexico. (*Id.*)

The Government counters that no procedural error or prejudice occurred since the checklist was properly utilized and customs officials have discretionary authority to determine whether to allow voluntary withdrawal. The Government submits that Customs and Border Patrol Officer Christopher Dominguez properly completed the checklist and it was reviewed and approved by two supervisors. Pursuant to this form, officers determined that defendant should not be permitted to withdraw her application for admission.

The Court sees no procedural error here that would invalidate the prior order of removal based on a due process violation. The federal requirements of an expedited removal proceeding do not include a requirement that an alien be informed of their right to withdraw an application for admission. *See* 8 U.S.C. § 1225. Moreover, voluntary departures and an immigration officer's ability to permit an alien to withdraw his or her application are forms of discretionary relief to which an alien is not automatically entitled. *See Tovar-Landin v. Ashcroft*, 361 F.3d 1164, 1167 (9th Cir. 2004) ("[A]liens have no fundamental right to discretionary relief from removal for purposes of due process and equal protection…[b]ecause there is no constitutionally protected liberty interest in the discretionary privilege of voluntary departure, the due process claim fails."); *United States v. Barragan-Camarillo*, 460 F. App'x 639 (9th Cir. 2011) (an immigration officer's failure to inform an alien of the option of withdrawing an application for admission is not prejudicial because such relief is discretionary). Further, federal immigration regulations direct that permission to withdraw an application for admission is within the discretion of

the Attorney General, and "should not normally be granted unless the alien intends and is able to depart the United States immediately." *See* 8 C.F.R. § 235.4. The guidance checklist contained accurate information and was used appropriately by U.S. Customs and Border Protection agents to aid in making a discretionary decision about whether to allow defendant to withdraw her application for admission.

While there is case law in the Second Circuit holding that failure to advise or inform an alien of discretionary relief, such as voluntary withdrawal of an application, may be procedural error, those cases presented distinguishable factual scenarios where defendants were subject to different immigration proceedings and requirements than the case at bar. *See Copeland*, 376 F.3d at 70-73 (failure of immigration judge to inform alien of discretionary relief under Section 212(c) was procedural error where, even though the relief was discretionary, the alien would have been entitled to a hearing); *Gonzalez*, 2015 U.S. Dist. LEXIS 69904, at *1 (finding that defendant's prior removal order was invalid where both immigration judge and his lawyer failed to advised him of his right to seek voluntary departure since the Board of Immigration Appeals had specifically held that if an alien is eligible for voluntary departure, the judge must inform the alien about its availability so that he or she may apply); *United States v. Jacek Chmielowski*, Case No. 1:15-CR-185, Dkt. No. 31 (W.D.N.Y. May 13, 2016) (Schroeder, J.) (recommending dismissal of an illegal reentry charge where defendant's attorney failed to appear at deportation proceeding and the attorney may have convinced the immigration judge that justice would be served by allowing defendant to withdraw his application to enter the United States). Indeed, it appears that in these cases the defendant was not subject to expedited removal proceedings, and that the error was the failure to inform defendant of

the ability to seek or request withdrawal of the application for entry. In contrast here, Custom and Border Patrol officers had already considered these avenues and determined that defendant was not eligible for withdrawal of her application or voluntary departure. Indeed, defendant's argument is not that she was misinformed of her rights or opportunities for review, but instead that officers did not adhere to checklist guidelines and were wrongful in not exercising discretionary authority in her favor. (Dkt. No. 23, pg. 4-9). She contends that this supports a finding of fundamental unfairness.

Prejudice is shown where there is reasonable probability that, but for the procedural error, the result of the proceeding would have been different. *See Copeland*, 376 F.3d at 73. "[A] district court evaluating prejudice should "take into account actual cases in which similarly situated aliens have been granted or denied discretionary relief." *United States v. Francisco Lopez*, 445 F.3d 90, 101 (2d Cir. 2006). A determination of prejudice involves balancing the adverse factors evidencing an alien's undesirability as a permanent resident against favorable factors and social and humane considerations. *See United States v. Cerna*, 603 F.3d 32, 41 (2d Cir. 2010). Here, although no procedural error is found, the Court will review whether prejudice existed in the discretionary decision.

Defendant claims the checklist was improperly completed because it erroneously stated defendant made misrepresentations during the entry process. However, defendant admitted she presented false papers to immigration officers at the Arizona port of entry, which constitutes an intentional misrepresentation. In *Barajas-Alvarado*, the Ninth Circuit held that defendant's deliberate use of false documents established his intent to violate the law and made it implausible that immigration officers would have exercised discretion

11

in his favor had he requested withdrawal of his application for admission. 655 F.3d at 1090-91. Additionally, Customs and Border Protection Directive No. 3340-043, "The Exercise of Discretionary Authority," explains that "withdrawal of an application for admission should not be permitted in situations involving obvious, deliberate fraud on the part of the applicant." (Dkt. No. 19, pg. 30). Defendant's presentation of false identification papers is an adverse factor significantly lowering the probability of a favorable exercise of discretion.

Some factors do weigh in defendant's favor, including that the nature of defendant's previous inadmissibility was "minor/technical" and that she had minor children already in the United States. However, other factors adversely affected the use of discretionary authority to allow her withdrawal. Defendant objects to the checklist indication that she posed a threat to the United States for being "likely to add to the illegal population." (Dkt. No. 19, pg. 17). But defendant admits that she had been living and working the United States for over ten years without applying for legal residency or citizenship. Further, as a healthy person, neither elderly nor a child, there were no humanitarian or public interest considerations weighing in defendant's favor. (*Id.*, at pg. 16). Moreover, defendant's fraudulent production of documents tips the scale strongly against her claim. *See Raya-Vaca*, 771 F.3d at 1208 (explaining that the presence or absence of obvious or deliberate fraud is a crucial consideration that ordinarily militates against withdrawal). Based on this, defendant has not demonstrated a reasonable probability that different relief would have been given, even if a procedural error had occurred.

As it is evident that Customs and Border Protection officers adhered to the checklist guidelines, recorded accurate information, and appropriately exercised discretion under the circumstances, this Court concludes that no procedural error or prejudice amounting to fundamental unfairness occurred. For these reasons, the Court recommends denial of defendant's motion to dismiss the Indictment.

II.   **_Motion to Suppress Evidence and Statements_**

a. _Findings of Fact_

During an evidentiary hearing on August 15, 2019, the Court heard testimony from Jason Rouch, United States Border Patrol Agent. (Dkt. No. 37). His testimony related to events that occurred on the morning of December 18, 2018 on board an Amtrak train stopped at the Depew, New York station.[2] (_Id._, at pg. 9). Defendant also filed a supplemental affirmation providing personal knowledge of the events that occurred on December 18, 2018. (Dkt. No. 31).

Agent Rouch testified that he was conducting "transportation checks" with two or three other agents on that date, but he was the only agent present when he entered the dining car of the train. (Dkt. No. 37, pgs. 10-11). He began his patrol duties at the front of the dining car and moved toward the back, selecting people based on their seating order inside the car. (Id. at pgs. 10-11, 46-47). He stated he asked four or five passengers questions about their citizenship before reaching the defendant. (_Id._).

Agent Rouch encountered the defendant seated at a table inside the dining car. (_Id._ at 11, 16). When he approached her, Agent Rouch identified himself as a border patrol

---

[2] Agent Rouch testified that the events occurred on December 18, 2014, but the Court concludes that this date was stated in error, as the rest of the record establishes the Amtrak train arrest occurred on or about December 18, 2018.

agent and asked her to state her citizenship. (*Id.*, at 11-12). Defendant stated she was a citizen of Mexico. (*Id.*). Agent Rouch then asked if she had a passport and defendant searched through her bag to find her passport (*Id.*) Defendant handed the passport to Agent Rouch and he checked to see if there was a visa inside. (*Id.*). When he saw no visa, Agent Rouch testified that he asked defendant if she had one and she said no. (*Id.* at 12). He then asked if she was in the country illegally and she said yes. (*Id.* at 14). After this admission, Agent Rouch testified that he asked escorted defendant to retrieve personal property she had in her train compartment. (*Id.* at 14-15). They then exited the train and went to the Buffalo Border Patrol station for further processing. (*Id.*).

During the initial interaction inside the dining car, Agent Rouch testified that he was speaking in a normal conversational tone and did not shout at any point. (*Id.* at 15-16). Agent Rouch stated that defendant appeared nervous as soon as he asked to see her passport. (*Id.* at 11-12). When he learned defendant was from Mexico, he began conversing with her in Spanish. (*Id.* at 12-13). Agent Rouch was armed, but he did not brandish or touch his weapon during the encounter. (*Id.* at 16-17). He had no physical contact with the defendant other than when she handed her passport to him. (*Id.*). He stood at the head of the table, facing the defendant and did not block her ability to get out from seat. (*Id.*). He did not handcuff the defendant. (*Id.*) Agent Rouch was wearing his uniform, which includes a badge, bulletproof vest, and a belt with handcuffs and a baton. (*Id.*) The initial encounter lasted between two and three minutes. (*Id.* at 15). Defendant did not ask whether she was free to leave or whether she had to answer Agent Rouch's questions. (*Id.* at 17).

14

Agent Rouch was the only witness to testify at the hearing. It is noted that after having the opportunity to listen to Officer Rouch and observe his demeanor during the hearing, the Court finds him to be wholly credible.

b. *Conclusions of Law*

Under the Fourth Amendment, a search or seizure conducted without a warrant issued upon probable cause is "per se unreasonable…subject only to a few specifically established and well-delineated exceptions." *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). One such exception is where authorities have obtained the voluntary consent of a person authorized to grant such consent." *United States v. Elliott*, 50 F.3d 180, 185 (2d Cir. 1995). As discussed below, the initial encounter between defendant and law enforcement was consensual, and defendant was not seized under the Fourth Amendment until Border Patrol Agent Rouch found probable cause to arrest her.

Defendant contends that she was illegally seized by Agent Rouch on December 18, 2018 and therefore all fruits of that seizure, including her statements on that date, her fingerprints, and other biometric data must be suppressed. Defendant argues that the encounter with Agent Rouch was not based on consent and instead constituted an illegal seizure. (Dkt. No. 17, pgs. 18-21). Viewing this as an investigatory stop under *Terry v. Ohio*, 392 U.S. 1 (1968), defendant argues that she was restrained without reasonable suspicion. (*Id.* at 21-23). She contends that Agent Rouch lacked reasonable suspicion to stop her, and that she was stopped based solely on her "Latina appearance." (Id.). Indeed, defendant cites several studies and articles that condemn the increase of transportation checks in upstate New York for the use of racial profiling. (Dkt. No. 23, pgs. 13-20).  She

15

contends that Agent Rouch singled her out and approached only her in the dining car of the train, positioned himself next to her seat where she was blocked from moving, and immediately began to interrogate her and demand proof of citizenship. (Dkt. No. 31, pgs. 3-4). Defendant argues that from the moment Agent Rouch approached her she was not free to leave or end the encounter. (*Id.*). The Court disagrees and finds that defendant responded to Agent Rouch's questions and showed him her passport during a consensual encounter. Therefore, no Fourth Amendment violation occurred.

Not every encounter between a police officer and a citizen is a seizure implicating the Fourth Amendment. *Terry*, 392 U.S. at 19, n. 16. "Certainly, a police officer is free to approach a person in public and ask a few questions; such conduct, without more, does not constitute a seizure." *United States v. Lee*, 916 F.2d 814, 819 (2d Cir. 1990). Importantly, in a consensual encounter between a police officer and a citizen, the officer may initiate the contact without any objective level of suspicion. *See United States v. Glover*, 957 F.2d 1004 (2d Cir. 1992). Further, law enforcement may generally ask to see identification during a consensual encounter. *Immigration & Naturalization Serv. v. Delgado*, 466 U.S. 210, 216 (1984). The Supreme Court has instructed that in evaluating whether an encounter with an officer constituted a seizure, a court is to consider all circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that they were not free to decline the officer's requests or otherwise terminate the encounter. *Florida v. Bostick*, 111 S. Ct. 2382 (1991). Examples of circumstances which indicate that a seizure has occurred include: "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person…or the use of language or tone of voice indicating that

16

compliance with the officer's request might be compelled." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).

In *United States v. Delgado*, a border patrol agent approached a defendant at an Amtrak train station, defendant agreed to speak with the agent, and the agent asked defendant about his citizenship and for identification. 797 F. Supp. 213 (W.D.N.Y. 1991) (Skretny, J). The Court found that the encounter was consensual and that the conduct did not constitute a Fourth Amendment seizure. *Id*. Following an evidentiary hearing, Judge Skretny reasoned that the agent testified that although he was armed, he did not have his hand on his weapon when talking to the defendant. Further, there was no evidence that the agent displayed the weapon in a threatening manner or physically touched defendant. Similarly, in *United States v. Archeval-Vega*, an initial encounter between a defendant and a DEA task force agent at a train station was not found to be a seizure implicating the Fourth Amendment. 883 F. Supp. 904 (W.D.N.Y. 1994) (Foschio, J.). The facts demonstrated that the defendant was approached by two agents who asked if they could speak with him, no weapons were drawn, and the agents used a conversational tone. *Id*. It was noted that the officers "had a legal right to stop [defendant] and make reasonable inquiry to ascertain his citizenship or immigration status." *Id*.

Here, testimony offered shows that the encounter between defendant and Agent Rouch was consensual and does not implicate Fourth Amendment issues. Similar to *Delgado* and *Archeval-Vega*, Agent Rouch approached defendant and inquired about her identity and citizenship. Unlike those cases though, defendant was not approached by the agent in a train station; she was aboard the train and seated in a dining car while the train was stopped at the Depew Station. The Court must consider all circumstances of

the encounter in determining whether a reasonable person would feel free to decline the agent's requests or terminate the encounter under the *Bostick* standard. The defendant stresses: (1) Agent Rouch's imposing physical size and authoritative uniform, (2) the confined space of the train car, and (3) defendant's own characteristics (a non-English speaking alien) as key factors supporting a finding that a reasonable person would have felt this was not a consensual interaction. *See United States v. Gray*, 883 F.2d 320, 322 (4th Cir. 1989) (setting out three-factor test for determining whether someone has been seized: conduct of police, characteristics of a particular defendant, and physical surroundings of encounter). However, these factors, along with those identified in *Mendenhall*, point toward a conclusion that a reasonable person would not have felt their liberty was restrained under these circumstances.

Agent Rouch's conduct was not threatening or aggressive, apart from the inherent authority projected by wearing a Border Patrol uniform. He testified that he was the only agent present in the dining car, and that when he approached the defendant he identified himself as a border patrol agent and asked her to state her citizenship. After she stated she was a citizen of Mexico, he asked to see her passport and saw that there was no visa inside. He then asked if she was in the country illegally and she said yes. Agent Rouch testified that he was speaking in a normal conversational tone and did not shout at any point. He was armed, but he did not brandish or touch his weapon during the encounter. He did not handcuff her. In fact, he had only minimal physical contact with the defendant.

The physical surroundings in the train encounter do not support the defendant's claim either. Defendant was seated at a table in the dining car. Although Agent Rouch was standing in the aisle, he testified that he was not blocking defendant's ability to get

out from her seat. Even if Agent Rouch's positioning on the train had been near the exit door, the Supreme Court has held that immigration agents positioned by an exit does not evidence an intent to seize or prevent people from leaving. *See Delgado*, 466 U.S. at 216-218. Defendant further submits that a confrontation in a confined environment is indicative of a seizure. The physical constraints of tight quarters are relevant to the inquiry, but less so when a passenger has voluntarily placed herself in a cramped setting such as a bus or train. *See United States v. Lewis*, 921 F.2d 1294, 1299 (D.C. Cir. 1990); *cf. Bostick*, 501 U.S. at 436 ("Bostick's movements were 'confined' in a sense, but this was the natural result of his decision to take the bus; it says nothing about whether or not the police conduct at issue was coercive.")

Finally, the individual characteristics of defendant do not add significant weight toward concluding this was an involuntary interaction. In particular, where the level of intimidation is generally increased when a non-English speaker is questioned by U.S. law enforcement, here Agent Rouch testified that he began speaking to defendant in Spanish as soon as he learned she was from Mexico. Further, although Agent Rouch did not advise the defendant that she was free to leave or not respond to his questions, "the voluntariness of [her] responses does not depend upon her having been so informed." *See Mendenhall*, 446 U.S. at 555; *see also INS v. Delgado*, 466 U.S. at 216.

Defendant appears to argue that no encounter between a uniformed border patrol agent and passenger on a conveyance such as a train could be consensual. The caselaw simply does not support defendant's claims. Here, the lack of physical contact, lack of weapon display, and the use of quiet, conversational language all suggest that Agent Rouch's conduct would not have communicated to a reasonable person that they were

not free to decline his requests or otherwise terminate the encounter. The evidence supports a finding that the initial interaction was based on consent.

Further, based on the determination that the exchange was consensual, Agent Rouch did not need any individualized reason to stop and question defendant. Thus, defendant's argument that she was racially profiled, and that her Latina appearance does not constitute reasonable suspicion, is moot. Moreover, based on Agent Rouch's testimony, it appears he acted routinely in his questioning of passengers aboard the train and did not single out the defendant based on her appearance or other factors.

Agent Rouch was permitted to ask defendant about her citizenship as part of a consensual encounter. Once defendant provided her passport, which did not have any valid visa or entry stamps, and stated that she was in the country illegally, there was probable cause to arrest her. The defendant was not "seized" until after the questioning ended and Agent Rouch escorted defendant to get belongings from her train compartment.

Lastly, defendant argues that the evidence should be suppressed for the agency's failure to follow the "two officer rule," which requires that an alien arrested without a warrant must be examined by an officer other than the arresting officer. *See* 8 C.F.R. § 287.3. (Dkt. No. 23, pg. 15). This regulation provides the exception that "if no other qualified officer is readily available and the taking of the alien before another officer would entail unnecessary delay," then the arresting officer may conduct the examination. *Id*. Defendant submits that other agents were available, based on Agent Rouch's testimony that he was working with other agents to do transportation checks that day. Therefore, defendant asserts, Agent Rouch violated the rule by both arresting defendant and

completing all the paperwork associated with her arrest at the Border Patrol Station. However, the evidence shows that at least two other agents, in addition to Agent Rouch, were involved after defendant's arrest. The advisement of rights ("Adviso De Derecho") form states that defendant was interviewed and advised of her *Miranda* rights by Agent Carlos Garcia (Def. Ex. B), and the "Report of Deportable/Inadmissible Alien" lists the "Examining Officer" as John Connolly. (Govt. Ex. 1). These records foreclose defendant's argument that the "two officer rule" was violated.[3]

For these reasons, the Court recommends that defendant's motion to suppress evidence and statement be denied.

### III.    *Motion for Discovery*

#### a.    *Rule 16 Discovery and Expert Witnesses*

Defendant moves for discovery pursuant to Rule 16 of the Federal Rules of Criminal Procedure, which requires that the Government disclose evidence and information upon request of a defendant. (Dkt. No. 17, pgs. 24-26). While Rule 16 was intended to provide for liberal discovery, a defendant is not entitled to discovery of "the entirety of the Government's case against him." *United States v. Percevault,* 490 F.2d 126, 130 (2d Cir. 1974). Rule 16 provides that a defendant is entitled to the following: (1) a defendant's written, recorded or oral statements in the possession of the Government; (2) the defendant's prior record; (3) documents, objects, books, papers, photographs, etc. that will be used during the Government's case-in-chief; (4) reports of examinations or tests; (5) and information about expert witnesses in accordance with Federal Rules of

---

[3] Defendant cites *Rajah v. Mukasey*, 544 F.3d 427, 447 (2d Cir. 2008), for the proposition that a significant regulatory violation may require suppression of evidence. As the Court has already determined no regulatory violation existed, analysis of whether suppression would be the appropriate remedy is unnecessary.

Evidence 702, 703 and 705. *See* Fed. R. Crim. P. 16(a)(1). Rule 16 specifically exempts from disclosure "reports, memorandum, or other internal Government documents made by an attorney for the Government or other Government agent in connection with investigating or prosecuting the case." *See* Fed. R. Crim. P. 16(a)(2).

Here, defendant has requested, *inter alia*, statements, reports of physical or mental examinations and scientific tests, visual or audio identification procedures, defendant's criminal history information, investigative reports and documents, any wiretap, pen register or search warrant applications, video or audio recordings, photographs, a list of expert witnesses and their reports, and other physical evidence in the custody or control of the Government. Additionally, defendant requests discovery of all United States Customs and Border Protection and United States Border Patrol internal rules and regulations related to "transportation checks" and the personnel file of Agent Rouch. (Dkt. No. 23, pg. 21). Under Rule 16, defendant is not entitled to personnel records, but the Government is reminded that to the extent such files contain *Brady* or *Giglio* material, such material must be timely disclosed. At oral argument, the Government represented that it would provide rules and regulations related to transportation checks. The Government further submits that it has provided defendant with all requested items, in its possession, that are relevant to this case and discoverable pursuant to Rule 16, including defendant's "A-file," which contains memorializations of any statements made by defendant, defendant's prior criminal record, and all documents, objects, search and seizure, and identifications. Based upon the representations made by the Government, including that it will continue to provide discoverable evidence as it becomes available, the Court finds that the Government has complied with Rule 16. The Court therefore

denies defendant's request as moot. The Government is reminded that its disclosure obligations continue up through and during trial. *See* Fed. R. Crim. P. 16(c).

### Disclosure of Brady Material

Defendant moves for the disclosure of any favorable, exculpatory or impeachment materials pursuant to *Brady*, *Giglio* and their progeny.[4]  (Dkt. No. 17, pgs. 27-29). "[A]s a general rule, *Brady* and its progeny do not require immediate disclosure of all exculpatory and impeachment material upon request by a defendant." *United States v. Coppa*, 267 F.3d 132, 146 (2d Cir. 2001). "[A]s long as a defendant possesses *Brady* evidence in time for its effective use, the Government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner." *Id.* at 144.

The Government submits that it is mindful of its obligations under *Brady* and its progeny. The Government indicates that it is not in possession of any exculpatory *Brady* material but that it will disclose any exculpatory information it should become aware of. The Government agrees to provide impeachment *Brady* material, namely, promises of leniency or immunity agreements with witnesses, criminal records of witnesses, immoral or criminal acts committed by witnesses, and prior inconsistent statements, prior to the commencement of trial and when the Government produces *Jencks Act* material. Given the Government's representations, defendant's motion to compel the production of *Brady*/*Giglio* material is denied. Consistent with *Coppa*, the Government is reminded of its continuing obligation to timely disclose any *Brady* and *Giglio* material to defendant. *See United States v. Padovani*, No. 14-CR-00224, 2016 WL 5402696, at *4 (W.D.N.Y. Sept. 28, 2016).

---

[4] *Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972).

_Disclosure of Evidence Pursuant to Rules 404(b), 608 and 609_

Defendant moves for disclosure of any evidence of prior crimes or bad acts the Government intends to introduce at trial pursuant to Federal Rule of Evidence 404(b). (Dkt. No. 17, pg. 30). Defendant also moves for pretrial disclosure of impeachment evidence pursuant to Federal Rules of Evidence 608 and 609. (_Id._) The Government states that it will provide reasonable notice in advance of trial of the general nature of prior uncharged crimes that it intends to use at trial under Rule 404(b). It further submits that it has no obligation to provide pre-trial notice of impeachment evidence under Rules 608 and 609 and will address same in its pre-trial memorandum to the District Court. The Government further states that, pursuant to Rule 404(b), it intends to introduce at trial, all prior criminal conduct acts or wrongs for the purpose of showing proof of a defendant's motive, opportunity, intent, preparation, plan, knowledge, identity, and the absence of mistake or accident. The Government indicates it will provide this information in reasonable time in advance of trial and when directed by the trial judge. The Government states that should it become aware of additional Rule 404(b), Rule 608, or Rule 609 evidence, it will notify defendant in advance of trial.

The Government is required to provide "reasonable notice in advance of trial" of the general nature of prior uncharged crimes or bad acts it intends to introduce against a defendant. _See_ Fed. R. Evid. 404(b). Rule 608 of the Federal Rules of Evidence does not contain the same pretrial notice requirement. Based upon the Government's representation that it will disclose bad act or impeachment evidence prior to trial, defendant's motion is denied as moot. The Court instructs that any disclosure should be done in accordance with the District Court's pretrial order. The issue of admissibility of

24

evidence pursuant to Federal Rules of Evidence 404(b), 608 and 609 is left to the determination of the District Court at the time of trial.

### Leave to File Additional Motions

Defendant also moves to preserve her right to make further and additional motions. (Dkt. No. 17, pg. 31). To the extent defendant intends to bring motions based upon new rulings, information, or evidence, her request for leave to file additional motions is granted. To the extent defendant intends to bring motions concerning issues that could have been raised prior to the previous motion deadline, defendant's request is denied without prejudice to bringing the motion upon a showing of good cause for the untimely filing.

### Government's Request for Reciprocal Discovery

The Government moves for reciprocal discovery pursuant to Rule 16(b) of the Federal Rules of Criminal Procedure including the opportunity to inspect, copy or photograph books, papers, documents, photographs, tangible objects or copies or portions thereof which are in the possession, custody or control of the defendant and which the defendant intends to introduce as evidence at trial, as well as the results or reports of any physical or mental examinations or scientific tests or experiments made in connection with the case. (Dkt. No. 21, pgs. 26-27). The Government's motion for reciprocal discovery is granted, and defendant is reminded that her disclosure obligations continue up through and during trial. *See* Fed. R. Crim. P. 16(c).

25

## CONCLUSION

For the foregoing reasons, it is recommended that defendant's motion to dismiss the indictment and motion to suppress evidence and statements be denied. It is ordered that defendants' omnibus discovery demands are decided in the manner detailed above.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ordered that this Report, Recommendation and Order be filed with the Clerk of Court.

Unless otherwise ordered by Judge Wolford, any objections to the recommendations portion of this Report, Recommendation and Order must be filed with the Clerk of Court within fourteen days of service of this Report, Recommendation and Order in accordance with the above statute, Rules 59(b), 45(a), and 45(c) of the Federal Rules of Criminal Procedure, and Local Rule of Criminal Procedure 59. Any requests for an extension of this deadline must be made to Judge Wolford.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report, Recommendation and Order WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.*** *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988).

*Pursuant to Local Rule of Criminal Procedure 59(c)(2), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal*

authority."  **Failure to comply with these provisions may result in the District Court's refusal to consider the objection.**

 

      **SO ORDERED**.

 

    Dated:  February 7, 2020
            Buffalo, New York

                                   MICHAEL J. ROEMER
                                   United States Magistrate Judge